J-S50009-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
:           PENNSYLVANIA
:
            v.                :
:
:
ANDRE JACOBS                :
:
           Appellant      :    No. 1607 WDA 2017

Appeal from the PCRA Order October 11, 2017
In the Court of Common Pleas of Fayette County Criminal Division at
No(s):  CP-26-CR-0000265-2005

BEFORE:  BOWES, J., OTT, J., and KUNSELMAN, J.

MEMORANDUM BY BOWES, J.:          FILED DECEMBER 27, 2018

Andre Jacobs appeals from the October 11, 2017 order denying PCRA relief.  Since Appellant was deprived of assistance of counsel at critical points in the PCRA process, we vacate the order and remand for further proceedings consistent herewith.

On February 24, 2004, Appellant assaulted two corrections officers while he was in the long-term segregation unit at the State Correctional Institution at Fayette ("SCI Fayette").  On December 4, 2007, a jury convicted him of aggravated assault, assault by a prisoner, and simple assault, and the court sentenced him to twenty-seven to 120 months imprisonment.  Appellant filed a timely direct appeal from judgment of sentence, which this Court denied.

Commonwealth v. Jacobs, 1631 WDA 2012 (Pa.Super. 2013) (unpublished memorandum).[1]

On May 9, 2014, Appellant filed a timely pro se PCRA petition, his first, in which he identified two issues involving trial counsel's ineffectiveness: that trial counsel failed to raise an insanity defense, or alternatively, that counsel failed to investigate whether his prescribed anti-psychotic medications caused him to be involuntarily intoxicated and to act out violently against the prison guards. Counsel was appointed, and subsequently, the court granted counsel permission to withdraw. The court appointed James V. Natale to act as counsel. Attorney Natale filed a motion seeking discovery of Appellant's mental health records and disciplinary report, and requesting that the court order a psychiatric assessment of Appellant to determine whether he suffered from a mental illness. The motion was granted, and Dr. Bruce Wright conducted a psychiatric assessment of Appellant on January 16, 2016.

On February 12, 2016, Appellant wrote to Attorney Natale complaining that Dr. Wright was given only one 2005 report from Dr. Stuart Burstein, and not the entirety of his mental health records. Appellant advised counsel that Dr. Wright told him that he did not have sufficient information to complete the evaluation, although the expert filed a report four days later.

---

[1] We note that more than five years elapsed between Appellant's conviction and the resolution of his direct appeal. Appellant's direct appeal to this Court initially was dismissed when his counsel failed to file a brief. Appellant had to file a PCRA petition in order to obtain reinstatement of his direct appeal rights.

Counsel filed an amended PCRA petition on Appellant's behalf on April 25, 2016. He represented therein that, after review of Appellant's mental health records and his assessment, Dr. Wright noted Appellant's long history of mental illness dating back to childhood; that he had been diagnosed with mood disorders, intermittent explosive disorder, post-traumatic stress disorder, personality disorder, substance abuse, and learning difficulties; and that he had been prescribed numerous psychotropic medications. Amended Petition, 4/25/16, at ¶¶9, 10. Dr. Wright confirmed that Appellant had been diagnosed with bipolar disorder, personality disorder with mixed features, a history of conduct disorder, and substance abuse. Id. at ¶12. The expert opined that Appellant's solitary confinement had potentially exacerbated those illnesses. Based on Dr. Wright's report, PCRA counsel asserted that trial counsel was ineffective for failing to request a pre-trial evaluation of Appellant by a mental health professional to determine whether he was competent to stand trial and whether he was insane at the time of the incident. Id. at ¶¶4, 12.

In the successive months, counsel obtained additional records and supplied them to Dr. Wright to assist him in his assessment of Appellant's mental health status at the relevant time. A hearing was held on September 30, 2016, at which Appellant was present. Attorney Natale advised the court that Dr. Wright had concluded that Appellant was not insane at the time of the incident. Counsel added that, after reviewing Appellant's other issues, he had "serious doubts as to the merit of this PCRA petition." N.T. Amended Post

Conviction Relief Act Hearing, 9/30/16, at 4. Nonetheless, counsel stated that Appellant wanted his "assistance to help him effectuate his PCRA petition, and perhaps appeal[,]" and counsel defined his role as limited to providing that assistance. Id. Thus, Appellant was effectively forced to represent himself, as counsel did not file a no-merit letter following his re-evaluation of Appellant's insanity claim.

Appellant disputed counsel's version of their conversation.[2] He informed the court that counsel had advised him that he would withdraw from the case and Appellant would proceed pro se. Since Appellant felt he required legal assistance, he did not want to proceed pro se, and thus, he stated he would accept Mr. Natale as his attorney. Nonetheless, Appellant complained that Mr. Natale had failed to investigate the issue, and further, that this was the first time he had met counsel.

The PCRA court concluded from Attorney Natale's representations that the claim of trial counsel ineffectiveness for failing to obtain a psychiatric evaluation was the only arguably meritorious issue, and that all other issues had been previously litigated or waived. Id. at 9. Dr. Wright's letter, in which he opined that Appellant was not insane when he committed the offenses, was marked as an exhibit by the Commonwealth, and moved into evidence. Id. at 11. When counsel did not object to its admission, Appellant objected pro se, insisting that "[i]f [Attorney Natale is ] not going to represent me then I

_____

[2] Appellant also informed the court that he had filed a complaint against counsel with the Pennsylvania Disciplinary Board.

- 4 -

will proceed on my own, I have no other choice." Id. at 12. The court asked Attorney Natale to "to sit stand by," and noted Appellant's objection. Appellant challenged the admission of the report on the ground that Dr. Wright was not an expert in the psychiatric effect of solitary confinement, which the court overruled, and the report was admitted. The court stated that it would conduct an independent review of the record and render an opinion.

Appellant advised the court that he wished to testify. After being placed under oath, Appellant told the PCRA court that he wanted to call an expert on the adverse effects of solitary confinement, but he only learned that day that counsel was not going to call such an expert. Id. at 20. Appellant moved for a continuance in order to hire an expert, and the court denied the motion. Appellant then attempted to place into evidence the curriculum vitae and an article by Stuart Grassion, M.D., an expert in solitary confinement. The Commonwealth's hearsay objection to the proffered exhibit was sustained.

On November 3, 2016, PCRA counsel filed a motion requesting a Grazier hearing, representing therein that Appellant had expressed a desire to waive his right to counsel and proceed pro se.[3] The court scheduled the Grazier motion for a hearing on January 24, 2017. However, on November 28, 2016, the PCRA court issued an order in which it stated that it had

_____

[3] Attached to counsel's Motion for a Grazier Hearing was Appellant's handwritten pro se "Motion to Fire James V. Natale." In that motion, Appellant alleged that counsel "constructively abandoned" him at the September 30, 2016 hearing "by refusing to represent Defendant or pursue any of his issues." Motion to Fire James V. Natale, 10/27/16, at 1. He also alleged therein that counsel was required to file a "no-merit letter." Id. at 2.

- 5 -

considered the record of the September 30, 2016 hearing, and since there was no testimony offered as to Appellant's competency to stand trial, the court ordered that the parties appear for a hearing on January 24, 2017.

On December 27, 2016, Appellant, although ostensibly represented by counsel, filed a pro se supplemental PCRA petition. He alleged, inter alia, that trial counsel was ineffective for refusing to investigate his insanity defense, and he proffered evidence of the effects of solitary confinement.

On January 9, 2017, Attorney Natale obtained a continuance of the January 24, 2017 hearing until March 31, 2017, purportedly to obtain additional mental health records. On March 3, 2017, Attorney Martha Richards Conley entered her appearance on Appellant's behalf, and Attorney Natale successfully moved to withdraw as counsel on March 17, 2017.

The PCRA court clarified that the purpose of the March 31, 2017 hearing was to explore trial counsel's ineffectiveness as it related to Appellant's competency to stand trial. N.T. PCRA Proceeding, 3/31/17, at 20.[4] The Commonwealth called trial counsel, Jeremy Davis, Esquire, who testified that he did not have any concerns about Appellant's understanding of the nature of the charges or their discussions. Id. at 11. He was "impressed with [Appellant's] intelligence" and "[h]e was definitely assisting in his defense." Id. Trial counsel explained that Appellant testified on his own behalf, and

_____

[4] At the hearing, PCRA counsel agreed with the court that "[t]he issue of an insanity defense was addressed at the [earlier] PCRA hearing[,]" and that "[t]he issue is mental health evaluation to determine the defendant's competency to stand trial." N.T. PCRA Proceeding, 3/31/17, at 6.

identified a witness, whom counsel called via video. The first trial ended in a mistrial when the jury could not reach a verdict. A new trial was scheduled. Prior to the retrial, Attorney Davis testified that he and Appellant corresponded via letter and spoke on at least one occasion.

Trial counsel stated that he did not investigate the issue of Appellant's prior mental health problems or have him evaluated because he did not believe that Appellant was incompetent to stand trial. Id. at 18. Attorney Davis pointed to the fact that Appellant assisted him throughout trial. According to trial counsel, Appellant understood the questions he was asked. Counsel testified further that, as a Public Defender, he had previously sought evaluations for defendants to determine whether they were competent to stand trial. At no time during his communications with Appellant was there any indication that an evaluation was warranted. Id. at 15. In addition, trial counsel did not recall Appellant asking for a mental health evaluation, or advising counsel that he had been institutionalized when he was six years old due to mental health issues.

PCRA counsel then sought to introduce an April 5, 2016 report from Dr. Wright, the court-appointed psychiatrist, as evidence of Appellant's history of mental illness. She described that report as much more detailed than the report offered by the Commonwealth at the September hearing, and relevant not just to the case-in-chief, but also to sentencing. Id. at 22, 23. The Commonwealth objected on two grounds: that the report was not probative as to competency, and that it was entitled to cross-examine the doctor

regarding his opinions. PCRA counsel asked that she be permitted to produce Dr. Wright later, but the court sustained the Commonwealth's objections to the report.

Appellant testified as follows. He grew up in an abusive household. *Id.* at 25. He was diagnosed with PTSD as a six-year-old child, and was sent first to Eastern State School and Hospital, and then to Hoffman Homes in Gettysburg, for mental health treatment. After being charged with drug possession at age twelve or thirteen years of age, he was sent to a state institution at age fifteen. At age nineteen, Appellant was placed in solitary confinement, where he remained for seventeen years.

Appellant testified that Attorney Davis initially did not represent him, and further that the attorney was not prepared for the first trial. Appellant stated that he did not meet counsel until trial, but at that time, he supplied counsel with multiple documents detailing his mental health history, and showed him motions he had filed requesting a mental health evaluation. Appellant testified that he did not intentionally punch the guard, and that he wanted counsel to argue that the long-term effects of solitary confinement explained and excused his conduct. According to Appellant, trial counsel wanted to pursue a "he did not do it" defense, and was uninterested in literature about the medications he was taking at the time, his mental health background, or the adverse side effects of solitary confinement.

PCRA counsel sought to elicit testimony from Appellant regarding the conditions he experienced in solitary confinement. She argued that the

information was relevant to his competency in 2007. Appellant testified that he asked trial counsel to investigate the medications he was on at the time of the incident and maintained that due to the effects of the medications, he did not have the intent necessary to commit the crimes charged. Trial counsel, however, would not pursue this strategy.

On cross-examination, Appellant acknowledged that he testified at trial that he did not know if he struck the guard, but he did not intend to do so. Id. at 34. Furthermore, despite his claim that he was incompetent at the time of trial, Appellant admitted that he filed a civil action against SCI Pittsburgh in November 2008, prior to the underlying trial herein. He subsequently represented himself at a jury trial and received a $185,000 verdict against three prison workers. Id. at 35.

In support of his claim that solitary confinement affected his competency, Appellant offered Dr. Michael J. Zigmond, a neuroscientist, as an expert in "the biology of the brain and the behavioral consequences of brain changes." Id. at 39. Dr. Zigmond's report addressed the impact of isolation on animals, which he related to humans. In addition, the expert testified he was familiar with the scientific literature regarding the effects of isolation on humans. He opined that two hundred years of experience indicated that, "solitary confinement can cause anxiety, depression, fear, social withdrawal, and also violence." Id. at 41. Dr. Zigmond described the effects of certain drugs and prolonged isolation on the biochemistry of the brain, but had no

opinion as to Appellant's state of mind or competency on or about December 3, 2007. Id. at 46.

At the end of the hearing, PCRA counsel urged the court to consider not solely competency, but counsel's failure to investigate Appellant's mental health as well. The court noted that Appellant "had been represented by counsel and I was prepared until you entered your appearance to have a Grazier Hearing today." Id. at 47. That became unnecessary, according to the court, because Attorney Conley was representing Appellant. The court announced that it would consider "only those properly pled issues." Id. at 47. Counsel for Appellant argued that the issue of counsel's failure to investigate Appellant's mental health status was pled in both the pro se petition and the amended petition.

On October 11, 2017, the court denied PCRA relief. Attorney Conley presented a petition on October 30, 2017, requesting leave to withdraw as PCRA counsel for Appellant, which was granted. That same day, Appellant filed a pro se notice of appeal to this Court, and requested transcripts. The PCRA court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and Appellant timely complied. The PCRA court filed its Rule 1925(a) opinion, in which it concluded that Appellant did not establish that trial counsel was ineffective, and denied relief.

Appellant, who is represented by counsel on appeal, raises three issues for our review:

I.      Did the PCRA court err in not considering [Appellant's] counsel's brief as a request to amend [Appellant's] PCRA petition?

II.     Did the PCRA court err in dismissing Appellant's PCRA petition where [Appellant's] trial counsel abandoned [Appellant] at his September 20, 2016 hearing?

III.    Did the PCRA court err in dismissing Appellant's PCRA petition where the lower court denied Appellant his right to proceed pro se?

Appellant's brief at 5.

In reviewing the denial of PCRA relief, we must decide whether the PCRA court's factual determinations are supported by the record and are free of legal error. Commonwealth v. Brown, 2018 Pa. LEXIS 5489, *32-33 (Pa. 2018) (citing Commonwealth v. Spotz, 18 A.3d 244, 259 (Pa. 2011)). To the extent that the PCRA court's credibility determinations are supported by the record, they are binding on this Court. However, we apply a de novo standard of review to the PCRA court's legal conclusions. Id. We review the PCRA court's findings and the evidence of record in a light most favorable to the winner at the trial level, herein, the Commonwealth. Id.

The Commonwealth points out the inconsistencies among Appellant's amended PCRA petition, his Rule 1925(b) concise statement of errors, and the issues briefed and argued on appeal, and urges us to find all of Appellant's issues either waived or not properly before us. It contends that Appellant's first issue, regarding the failure to treat counsel's brief below as an amended PCRA petition, is waived for failure to argue it in his appellate brief. According to the Commonwealth, Appellant's second issue, which alleges abandonment

- 11 -

of PCRA counsel, is not properly before this Court because the PCRA petition alleged only trial counsel ineffectiveness. Appellant's third issue, that the PCRA court denied Appellant his right to proceed pro se, is waived for lack of argument in the brief. Finally, the Commonwealth maintains that Appellant has briefed and argued a fourth issue that was not fairly comprised within the errors alleged in Appellant's Rule 1925(b) concise statement, nor identified in his statement of issues in his brief: that trial counsel was ineffective for failing to investigate and evaluate Appellant's competency prior to trial. Hence, the Commonwealth contends that the issue is waived.

Appellant's first and third issues are not argued or developed in his appellate brief, and hence, we agree with the Commonwealth that these issues are waived. However, we reject the Commonwealth's contention that the issue of PCRA counsel ineffectiveness had to be identified in a PCRA petition in order to be preserved for appellate review. The alleged ineffectiveness of PCRA counsel had not yet occurred when the PCRA petition was filed. While generally the issuance of a Rule 907 notice of intent to dismiss provides an opportunity for a petitioner to respond with an assertion of PCRA counsel ineffectiveness, thus preserving the issue for purposes of appeal, no such notice is required where, as here, there is an evidentiary hearing. See Commonwealth v. Smith, 121 A.3d 1049, 1054 (Pa.Super. 2015) (citing Commonwealth v. Rykard, 55 A.3d 1177, 1189 (Pa.Super. 2012) (holding that "the Rule 907 response is the opportunity for the petitioner to object to

counsel's effectiveness at the PCRA level")).  Where a Turner/Finley no-merit letter is filed, the petitioner can preserve the issue of PCRA counsel ineffectiveness by asserting it in his objection.  See Commonwealth v. Rigg, 84 A.3d 1080, 1085 (Pa.Super. 2014); see also Commonwealth v. Ford, 44 A.3d 1190 (Pa.Super. 2012) (holding issues of PCRA counsel ineffectiveness must be raised in a serial PCRA petition, in response to a Rule 907 notice, or while the PCRA court retains jurisdiction).

In the instant case, no Rule 907 notice issued; Turner/Finley was not invoked.  However, Appellant voiced his complaints of PCRA counsel ineffectiveness at the September PCRA hearing and in a subsequent pro se motion to fire counsel, which was incorporated into counsel's motion for a Grazier hearing.  Those claims were not addressed at the second evidentiary hearing as the PCRA court limited the scope of that hearing to competency.  Although the PCRA court did not acknowledge and address the issue of PCRA counsel ineffectiveness in its Rule 1925(a) opinion, we find that Appellant raised the issue below for purposes of appellate review.[5]

_____

[5]  See Commonwealth v. Henkel, 90 A.3d 16 (Pa.Super. 2014) (en banc) (finding waiver of claims of PCRA counsel ineffectiveness raised for the first time on appeal); but see Commonwealth v. Patterson, 192 A.3d 1123, 1129 (Pa. 2018) (finding PCRA counsel's failure to file a timely appeal from denial of petitioner's first PCRA petition, raised for the first time on appeal, to constitute ineffectiveness per se, as it completely deprived him of appellate review).

Moreover, we find merit in Appellant's claim that he was abandoned by PCRA counsel at the September 30, 2016 hearing. The instant petition is Appellant's first PCRA petition.[6] The law is well settled that a petitioner has a rule-based right to counsel under the PCRA on a first petition, and that the right extends throughout the appellate process. See Commonwealth v. Adams, 350 A.2d 820 (Pa. 1976) (wherein the Supreme Court replaced the statutory right to collateral review counsel with a rule-based right to counsel). A petitioner is entitled to the assistance of counsel to guarantee that he has "at least one meaningful opportunity to have [his] issues reviewed." Commonwealth v. Karanicolas, 836 A.2d 940, 945 (Pa.Super. 2003) (citations and internal quotation marks omitted). That right "extends throughout the post-conviction proceedings, including any appeal from the disposition of the PCRA petition." Commonwealth v. Smith, 121 A.3d 1049, 1053 (Pa.Super. 2015); Pa.R.Crim.P. 904(F)(2).

The record establishes that Appellant filed a pro se petition, counsel was appointed, counsel was permitted to withdraw, and new counsel, Attorney Natale, was appointed. Attorney Natale obtained discovery, successfully

_____

[6] Appellant filed a prior PCRA in which he successfully obtained reinstatement of his direct appeal rights nunc pro tunc because direct appeal counsel failed to file a brief in this Court. Since "a PCRA petition brought after an appeal nunc pro tunc is considered an appellant's first PCRA petition[,]" Appellant was entitled to the appointment of counsel. Commonwealth v. Figueroa, 29 A.3d 1177, 1181 (Pa.Super. 2011) (quoting Commonwealth v. Fowler, 930 A.2d 586, 591 (Pa.Super. 2007)).

persuaded the court to appoint an expert, and filed an amended PCRA petition on Appellant's behalf. However, at the PCRA hearing on September 30, 2016, counsel represented to the court that the expert witness could not render an opinion that Appellant was insane at the time he committed the assault on the corrections officer, and that there were no other issues of merit to pursue. Counsel advised that he would assist Appellant in pursuing an appeal, which the court construed and accepted as an offer to act as standby counsel. Appellant, present for the hearing, expressed his surprise at counsel's abandonment of his claims, but stated that he did not want to proceed pro se as he felt he required legal assistance, and thus, he would accept Mr. Natale's assistance. However, he complained to the PCRA court about the procedure, and charged PCRA counsel with the failure to investigate the issues properly.

We agree with Appellant that PCRA counsel abandoned him at the September 30, 2016 hearing. Having concluded that there were no meritorious issues to present, PCRA counsel should have advised the court that he intended to seek leave to withdraw and file a Turner-Finley no-merit letter. Had counsel done so, Appellant would have had an opportunity to file a response asserting PCRA counsel's ineffectiveness for the reasons he stated at the September hearing. If the court subsequently granted counsel's petition to withdraw, Appellant could have either retained a new attorney or proceeded pro se.

Counsel's failure to follow the proper procedure culminated in hybrid representation at the September 30, 2016 hearing. Attorney Natale argued against his client. Counsel "ultimately succeeded neither in advancing Appellant's claims nor certifying their lack of merit." Karanicolas, supra at 947. For all practical purposes, Appellant was unrepresented at the hearing and he timely objected.[7]

Following the hearing, Attorney Natale continued to file motions on Appellant's behalf. Counsel sought additional discovery and then filed a motion for a Grazier hearing requested by his client. The PCRA court initially scheduled such a hearing, but the purpose of the hearing changed to an evidentiary hearing when Appellant retained new counsel. While it would appear at first blush that a second evidentiary hearing with new counsel would have alleviated any prejudice due to the lack of PCRA counsel at the first hearing, we do not find that to be the case on the record before us. At the second hearing, the scope of the inquiry was limited to whether Appellant was competent at the time of trial. Although Appellant was permitted some latitude in exploring the effect of medications and solitary confinement on brain chemistry, he was not permitted to revisit his claims of insanity/diminished capacity that Mr. Natale abandoned at the first hearing.

---

[7] The PCRA court also played a role in the irregularities that occurred herein. When PCRA counsel announced at the September 30, 2016 hearing that he could not represent Appellant, the court was obligated to intervene and ensure that the right to counsel was protected.

Our concern that Appellant was prejudiced by the lack of counsel at the first evidentiary hearing is heightened by the subsequent events. On the same day that Appellant filed a pro se notice of appeal to this Court, the PCRA court permitted Attorney Conley, who was privately retained, to withdraw as counsel. At the time, however, the PCRA court made no determination whether Appellant was entitled to appointment of counsel for purposes of appeal. The PCRA court directed him to file a Rule 1925(b) concise statement of errors complained of on appeal, and specifically noted on the order that it should be sent to Appellant. Thus, the court knew that Appellant was unrepresented, but failed to ascertain whether counsel should be appointed for purposes of appeal, or if Appellant waived his rule-based right to counsel. See Commonwealth v. Robinson, 970 A.2d 455, 459 (Pa.Super. 2009) (finding valid waiver of rule-based right to counsel where colloquy demonstrates that the petitioner understood "(1) his right to be represented by counsel; (2) that if he waived this right, he will still be bound by all normal procedural rules; and (3) that many rights and potential claims may be permanently lost if not timely asserted").

Consequently, Appellant filed a Rule 1925(b) concise statement of errors complained of on appeal without the benefit of counsel. The record establishes that Appellant had not waived his right to counsel, and there had been no determination that he did not qualify for appointed counsel. Nor was Appellant apprised that he had a right to retain counsel, or of the risks and benefits of

proceeding without counsel. Although Appellant subsequently retained counsel to prepare and file his brief in this Court, appellate counsel was limited to issues identified in Appellant's uncounseled Rule 1925(b) concise statement, perpetuating the prejudice.[8]

Accordingly, we find that Appellant was deprived of counsel at several critical stages of the litigation of his first PCRA petition, that he was prejudiced thereby, and that the order denying relief must be vacated and the case remanded. We note that Appellant is currently represented by private counsel. Upon remand, the PCRA court should first determine whether private counsel will continue to represent Appellant or, if not, whether Appellant qualifies for the appointment of counsel. In the event Appellant does not qualify for appointed counsel, and opts not to retain private counsel, he should be fully advised of the perils of proceeding pro se. If Appellant qualifies for appointed counsel, and does not waive his right to counsel in favor of representing himself at a Grazier hearing, counsel should be appointed. After resolution of the issues involving entitlement to counsel, Appellant should be afforded a new evidentiary hearing on all claims properly pled in the amended PCRA petition.

_____

[8] The Commonwealth avails itself of inadequacies in the uncounseled Rule 1925(b) concise statement to argue waiver herein. Specifically, the Commonwealth argues that Appellant's claim that trial counsel was ineffective for failing to investigate and evaluate Appellant's competency prior to trial is waived, as it was not identified in Appellant's Rule 1925(b) concise statement.

Order vacated. Case remanded for proceedings consistent herewith.

Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/27/2018